IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARY P. KUMMER, Executrix of the )
Estate of VINCENT R. KUMMER, Deceased, )
MARY PATRICIA KUMMER, his wife, )
)
      Plaintiff, )
)
v. ) Civil Action No. 05-1569
)
ALLIED SIGNAL, INC., et al. )
)
      Defendants. )

AMBROSE, Chief District Judge.

## OPINION AND ORDER OF COURT

The Plaintiff, Mary P. Kummer, who is representing Vincent R. Kummer's estate as his executrix, and on her own behalf as Mr. Kummer's wife, brings claims of wrongful death, survival action, loss of consortium, and exemplary and punitive damages against the defendants for defective asbestos containing products. Defendants Viacom Inc. f/k/a/ Westinghouse Electric Corp. (hereinafter as "Viacom"), Ford Motor Company (hereinafter as "Ford") and General Motors Corporation (hereinafter as "GM") all move for summary judgment in their favor. The Plaintiff, Mary Kummer (hereinafter as "Mrs. Kummer") does not oppose the motions by Ford and GM, thus summary judgment is granted in their favor. Mrs. Kummer does oppose Viacom's motion, and because there are genuine issues of material fact as to causation, Viacom's motion is denied.

## Factual Background

Unless otherwise indicated, the following material facts are undisputed.

Vincent Kummer (hereinafter as "Decedent") served in the United States Navy as a machinists' mate aboard the USS Noble from 1961-1965. Decedent worked in the engine room of the USS Noble which contained the steam turbines, pumps, valving and was next to the boiler room. Mr. Hosler came aboard the USS Noble in 1962 and was Decedent's divisional supervisor. Mr. Hosler stated that Decedent's primary role aboard the USS Noble was a boiler tender. Mr. Hosler oversaw Decedent's work in the engine room from March of 1962 through July of 1963.

Mr. Hosler stated that during his time as Decedent's supervisor, Decedent did not work on the Westinghouse turbines. Mr. Hosler also stated that Decedent never worked with asbestos containing material on the Westinghouse turbines and that Decedent never did anything to disturb the asbestos material on the turbines. In addition, Mr. Hosler stated that Decedent was in the area of the Westinghouse turbines frequently and he would have had to pass by them on the way to the upper decks of the ship or to the bathroom.

Mr. Hosler's statements are disputed, however, by Mr. Nielsen. Mr. Nielsen states in his affidavit that:

> I worked as a machinist mate in the Engine room aboard the USS Noble Naval Ship. Throughout the above mentioned department, on a daily basis, during the early 1960's, I recall working with Vincent Kummer . . . I know that Vincent Kummer was personally involved in the removal and repairing of the insulation that was used throughout the engine room, including but not limited to the turbines.
>
> . . .
>
> This asbestos-containing insulation was about two inches thick. When steam would flow thought the turbines it would vibrate and

2

> cause visible dust that Vincent Kummer and I were forced to breathe
> . . . The process of removal and repairing the Westinghouse turbines
> created dust to which Vincent and I were forced to breathe on a daily
> basis.

(Docket No. 51 at ¶24,25).

It is undisputed that Viacom f/k/a the Westinghouse Electric Co. manufactured the turbines that were aboard the USS Noble during Decedent's service. The turbines were installed on or before 1944. The insulation on the Westinghouse turbine was installed, by entities unknown, during the construction of the USS Noble on or before 1944. The Westinghouse turbines on the USS Noble required the use of asbestos-containing thermal insulation per the Navy's specifications. Additionally, Westinghouse was aware of health dangers associated with asbestos in the 1940's.

Mrs. Kummer claims that while aboard the USS Noble, Decedent inhaled asbestos fibers which caused him to develop the asbestos-related disease, mesothelioma. Decedent died of mesothelioma on January 12, 2005.

## SUMMARY JUDGMENT STANDARD

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c) (2007). In deciding a summary judgment motion, the court must "view the evidence . . . through the prism of the substantive evidentiary burden" to determine "whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of the evidence required by the governing law or that he did not." Anderson v. Consolidated Rail Corp., 297 F.3d 242, 247 (3d Cir. 2002) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254

(1986)). The Court must, however, examine the facts in the light most favorable to the non-moving party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255 (1986)).

## ANALYSIS

Both parties agree that substantive general maritime law applies to this case. For a tort claim to invoke general maritime law, at least on navigable waters, the tort must satisfy the traditional "locality" requirement as well as bear a significant relationship to traditional maritime activity. Executive Jet Aviation, Inc., v. City of Cleveland, 409 U.S. 249, 268 (1972); East River S.S. Corp. v. Transamerican Delaval, Inc. 476 U.S. 858, 864 (1986)(declining to answer whether torts occurring on the high seas require the maritime nexus analysis). The alleged tort in this case satisfies both the locality and maritime nexus requirements as the alleged exposure to asbestos occurred aboard the USS Noble. *See* Tritt v. Atlantic Richfield Co., 709 F.Supp. 630 (E.D.Pa. 1989)(holding that merchant seaman who claimed asbestos exposure injuries from working in a ship's engine room could invoke admiralty jurisdiction).

General maritime law is an area of federal substantive law that "'is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules,' drawn from both state and federal sources." Saratoga Fishing Co. v. J.M. Martinac & Co. 520 U.S. 875, 878 (1997) (citing East River). In East River the Supreme Court recognized products liability, as well as strict liability and

4

the application of Restatement (Second) of Torts § 402A (1965), as a part of the general maritime law. East River 476 U.S. at 865. As a result, it is the application of §402A that applies to this case.

Section 402A of the Restatement (Second) of Torts reads:

> 1. One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer or to his property if
> (a) the seller is engaged in the business of selling such a product, and
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Under Third Circuit case law (applying Pennsylvania law) it is plaintiff's burden to establish the elements of a §402A claim which are "(1) that the product was defective; (2) that the defect was a proximate cause of the plaintiff's injuries; and (3) that the defect causing the injury existed at the time the product left the seller's hands." Pavlik v. Lane Ltd./Tobacco Exporters International, 135 F.3d 876, 881 (3d Cir. 1998)(citing Davis v. Berwind Corp., 690 A.2d 186, 190 (Pa. 1997)). In proving proximate causation, there is no doubt that under §402A a plaintiff must specifically point to some product of the defendant and identify a defect that proximately caused the alleged injury. It has been held "consistently that in asbestos-related personal injury cases, general products liability principles apply; the plaintiff is required to establish that the product of a specific manufacturer caused the injury alleged." Robertson v. Allied Signal, Inc., 914 F.2d 360, 379 (3d Cir. 1990)(applying Pennsylvania law)(citations omitted).

Viacom argues that Mrs. Kummer cannot produce sufficient evidence to prove product identification, that is to say, Mrs. Kummer cannot prove that it was Viacom's product that caused Decedent's injury. First, Viacom argues that there is no evidence that the asbestos that caused Kummer's injury was from a Viacom product.

5

**1.** Viacom points to the fact that the product that Decedent was exposed to, the Westinghouse turbine, was not manufactured with asbestos insulation. Viacom argues that since they did not manufacture a product that contained asbestos, Mrs. Kummer's claim cannot proceed. One of the cases that Viacom cites is the Sixth Circuit case, Stark v. Armstrong World Industries, Inc., 21 Fed.Appx. 371 (6th Cir. 2001) (unpublished) (applying general maritime law) for the proposition that Viacom cannot be liable for asbestos related injuries caused by insulation not manufactured by Viacom and that was added to the Westinghouse turbine post-manufacture.

In Stark two of the defendants were ship boiler manufacturers that the plaintiff alleged were liable "directly as a consequence of asbestos from their own products and from the asbestos contained in other products "attached to" the boiler." Stark, 21 Fed.Appx. at 380. In affirming the grant of summary judgment the Sixth Circuit agreed with the trial court that "[the defendant] is only responsible for its own product-not the products that may be attached or connected to it." The court left a caveat, however, "although, [defendants] could not be responsible for a *manufacturing* defect under these circumstances, one could argue that a *design* defect claim might exist, if the defective attachments manufactured by others were part of the boiler design and were rendered unsafe due to that design." Id., 21 Fed.Appx at 381 (emphasis in original). The grant of summary judgment was affirmed because "[the plaintiff] has completely failed to make a design defect argument. He has not provided expert testimony, personal testimony or record evidence of a design flaw of the type discussed." Id. Thus, Stark provides that if the plaintiff would have been able to provide evidence of a design defect he would have been able to survive the summary judgment motion.

Here, Mrs. Kummer has alleged a design defect in the Westinghouse turbine and has provided evidence that survives summary judgment. Mrs. Kummer points to Plaintiff's Exhibit A, the Affidavit of James Gate, to show the Westinghouse turbine was specifically designed to be

6

insulated with asbestos insulation. (Docket No. 51 at 13-14). Mr. Gates states that:

> In the case of the USS Noble APA-218, the contracts incorporate NAVSEA contract specifications, which in turn incorporate military specifications, and these documents require use of asbestos-containing thermal insulation for the turbines.
> . . .
> The U.S. navy specifications for the Westinghouse turbines manufactured for the USS Noble APA-218, incorporated several lower-level specifications, including those governing the components or materials used for or with the turbines, such items as metals, bearings, packing, gaskets, insulation, etc. Some of these specifications required the use of asbestos-containing materials, such as thermal insulation for turbines.

(Docket No. 51 at 13-14).

Additionally, Mrs. Kummer points to Plaintiffs's Exhibits C, D, and E to show that Viacom was aware of adverse health consequences associated with asbestos. Exhibit C is a Westinghouse internal memo dated January 11, 1945 warning of health hazards associated with breathing in asbestos dust. (Docket No 51 at 28-29). Exhibit D is a Westinghouse interrogatory from a prior case stating that Westinghouse knew of health hazards associated with asbestos in the late 1940's. (Docket No. 51 at 33). Exhibit E is the deposition of a Westinghouse industrial hygienist stating that Westinghouse would have been aware of health hazards associated with asbestos in the early 1940's. (Docket No. 51 at 67).

Furthermore, it is undisputed that Viacom manufactured the turbine aboard the USS Noble. Since the above presented evidence is sufficient to survive summary judgment, Viacom's argument that Mrs. Kummer failed to identify a product of theirs must fail.

**2.** Viacom's second argument is that even if a product of theirs can be identified, Mrs. Kummer has failed to produce evidence that the product proximately caused Decedent's mesothelioma. Specifically, Viacom argues that Mrs. Kummer cannot prove that the Westinghouse

turbine proximately caused Decedent's mesothelioma because there is no evidence of Decedent's significant exposure to the asbestos insulation on the turbine.

The Third Circuit has not yet decided the standard for proximate causation under general maritime law §402A asbestos cases: the "substantial factor" or the asbestos specific "regularity, frequency and proximity" test. However, in applying Pennsylvania law, the Third Circuit has already accurately predicted Pennsylvania's adoption of the "regularity, frequency, and proximity" test in Robertson v. Allied Signal, 914 F.2d at 367; *see* Gregg v. V-J Auto Parts, Inc., 943 A.2d 216 (Pa. 2007)(adopting "regularity, frequency and proximity" test). To that end, since the "regularity, frequency, and proximity" test has been adopted by a majority of federal jurisdictions and many state courts, Robertson; Jones v. Ownes-Corning Fiberglas Corp., 69 F.3d 712 (4th Cir.1995)(applying North Carolina law); Slaughter v. Southern Talc Co., 949 F.2d 167 (5th Cir. 1991)(applying Texas law); Tragarz v. Keene Corp., 980 F.2d 411 (7th Cir. 1992)(applying Illinois law); Jackson v. Anchor Packing Co., 994 F.2d 1295 (8th Cir. 1993)(applying Arkansas law); Menne v. Celotex Corp., 861 F.2d 1453 (10th Cir. 1988)(applying Nebraska law), that both parties provide analysis under the test, and that the court may use state law where maritime law is silent, Floyd v. Lykes Bros. Steamship Co., Inc., 844 F.2d 1044,1047 (3d Cir. 1988) the "regularity, frequency, and proximity" test will be used as the standard for proximate causation in this case.

The Supreme Court of Pennsylvania recently discussed the manner in which a court is to determine whether the frequency of use of an accused product and the regularity of the plaintiff's employment in proximity thereto amounts to sufficient evidence to survive summary judgment. Gregg v. V-J Auto Parts, *supra*. In Gregg the Court explained that:

> [the regularity, frequency and proximity] criteria do not establish a rigid standard with an absolute threshold necessary to support liability. Rather, they are to be applied in an evaluative fashion as an

> aid in distinguishing cases in which the plaintiff can adduce evidence that there is a sufficiently significant likelihood that the defendant's product caused his harm, from those in which such likelihood is absent on account of only casual or minimal exposure to the defendant's product.

Gregg, 943 A.2d at 225 (citing Tragarz v. Keen Corp., 980 F.2d 411 (7th Cir. 1992)). Thus the "regularity, frequency and proximity" test is a *de minimis* rule requiring the plaintiff to present sufficient evidence to prove more than a casual or minimal contact with the product. Lohrmann v. Pittsburgh Corning Corp., 782 F.2d 1156, 1162 (4th Cir. 1986) (applying Maryland law).

Viacom denies that Decedent ever worked on the Westinghouse turbine or that he was within sufficient proximity to the turbine to have been exposed sufficiently for causation purposes. Viacom points to Mr. Hosler's deposition as evidence of Decedent's lack of frequency, regularity and proximity to the Westinghouse turbine. In particular, Mr. Hosler states that Decedent did not work on the Westinghouse turbine and rather only ever worked on the boilers. Mrs. Kummer responds to Viacom's assertion by pointing to the affidavit by Mr. Nielsen. Mr. Nielsen states that he witnessed Decedent work firsthand on the Westinghouse turbine.

This conflicting evidence creates a genuine dispute as to whether Decedent ever worked on the Westinghouse turbine. This genuine dispute is material because if Decedent did in fact work on the Westinghouse turbine as stated in Mr. Nielsen's affidavit then Mrs. Kummer would have presented sufficient evidence to find causation. Direct evidence of Decedent breathing in asbestos fibers from the Westinghouse turbine is enough to satisfy the *de minimis* standard of the "regularity, frequency and proximity" test.

As an additional point, Mrs. Kummer argues that she can survive summary judgment on the basis of the length of time Decedent worked in the engine room and Decedent's proximity to the Westinghouse turbines. Mrs. Kummer points to Mr. Hosler's deposition that stated that Decedent

passed by the Westinghouse turbines several times each day.

Since there are genuine issues of material fact, and sufficient evidence as to exposure has been presented, Mrs. Kummer survives summary judgment.

### ORDER OF COURT

AND NOW, this 31th day of October, 2008, after careful consideration, and for the reasons set forth in the accompanying Opinion, it is Ordered that the Viacom Inc.'s Motion for Summary Judgment (Docket No. 37) is DENIED and the General Motors Corp.'s and the Ford Motor Co.'s Motions for Summary Judgment (Docket No. 40 and 43) are GRANTED.

It is FURTHER ORDERED that counsel attend a pretrial/settlement conference scheduled for <u>November 5, 2008 at 11:00 AM</u> before the undersigned in Courtroom 3B of the U.S. Post Office & Courthouse, 700 Grant Street, Pittsburgh, Pennsylvania. Counsel shall have settlement authority, and parties are to be either present or available by telephone.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
Chief U.S. District Judge

Dated: October 31, 2008.

cc/ecf: All counsel of record.